## Hines v. Hines.

(Decided November 25, 1910.)

### Appeal from Ballard Circuit Court.

Divorce and Alimony—Cruel and Inhuman Conduct—Grounds Not
   Sustained.—In this action by a wife against her husband for a
   divorce and alimony on the ground that he had habitually be-
   haved towards her for six months in such a cruel and inhuman
   manner as to indicate a settled aversion to her or to per-
   manently destroy her peace and happiness, and had so at-
   tempted to injure her, as indicating an outrageous temper or
   probable danger to her life. Held, the proof fails to sustain
   any of the charges. There exists no grounds for divorce and none
   for alimony and the record shows no error prejudicial to ap-
   pellant and the judgment of the lower court refusing the divorce
   is affirmed.

J. H. THARP and J. B. WICKLIFFE, for Appellant.

WHEELER & HUGHES, for Appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

Fannie B. Hinkle and James L. Hines, aged about
25 years, were married December 11, 1907, and lived to-
gether until November 5, 1909. She then left him, and
returned to her mother. In the meantime a girl baby had
been born to them, which at the time of the separation
was about a year old. Appellant filed this suit against
her husband on November 15, 1909, for divorce and ali-
mony. The grounds relied on are that he had habit-
ually behaved toward her for the preceding six months in
such cruel and inhuman manner as to indicate a settled
aversion to her, or to destroy permanently her peace
and happiness; also, he had attempted to injure her, as
indicating an outrageous temper in him, or probable dan-
ger to her life and bodily injury from her remaining
with him. The proof fails to sustain any of the charges.
The families of the young people lived near each other.
Each was the youngest child in the family. In each
family was a widowed mother, and in the wife's family
two bachelor brothers, and in the husband's two spinster
sisters. The married couple had occasional spats, the
upshot of nothing in particular. The families meddled
and talked, and neighbors tattled. The man appears to
be a slow-moving, undemonstrative person, while the

wife is energetic, quick spoken and more nervous. He is a sober, quiet, plodding man. She is a good housewife of good character and reputation. Each has temper. So had Moses, the catechism tells us. People without temper are rare, and are oftener monks and nuns than usual as husbands and wives. James' garden was not properly tended. The chickens got in and scratched up the seeds. The well failed of water one season. The wood was allowed to get low at the wood-yard. Finally James found he could rent out his little place of sixty acres for more money than he could make on it by tending it, and made the contract contrary to his wife's wishes. He visited his mother frequently—his wife thought too frequently. It was told her that James was at his mother's when his wife thought he was off in the fields at work. That is the whole trouble, so far as the record shows, except we gather that busy-bodies meddled, and advised, the advice being: "If you can't live together in peace, better separate." If the outsiders had kept their own counsel, and these two young people had exercised a little more of patience and forbearance, and had magnified their love instead of their little differences, this family would probably have continued in comparative peace and contentmemt, building stronger day by day their own home, with its helpful influence for the litttle child whom they had brought into being, was entitled to the benefits and blessings of home, and to parental influence and nurture.

The chancellor upon the record before him, refused to grant appellant a divorce. He required the husband to pay $150 a year for two years for the maintenance of the child—a most liberal allowance for a  suckling babe, considering the man's estate was not worth over $3,500. But appellee does not complain of that.   The court made provision for the care of the child, giving its custody to the mother, with privilege to the father to visit it, and to take it for a week at a time,   when   it should be weaned, 'to his home, at his mother's, where he is now living.

There exists here no ground for divorce. Nor none for alimony. Tt is doubtful if the chancellor has jurisdiction or ought to interfere on the state of the record in the domestic affairs of the family, even by the kind of order entered in this case, though we have no doubt he was endeavoring to protect the child's welfare, and had the hope that time and opportunity for   reflection and mutual explanation might re-unite this family. There

is not a cross-appeal    The record shows no error prejudicial to appellant.    Consequently the judgment is affirmed.